AO 106 (Rev 04/10) Application for a Search Warrant (requesting AUSA Schlessinger)      Revised 10/30/2018

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of <br> *(Briefly describe the property to be searched or identify the person by name and address)* <br> Information associated with the cellular device assigned call number 469-989-0826 in the custody or control of Sprint | ) <br> ) <br> )   Case No. 19-1997 M <br> ) <br> ) <br> ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A  This court has authority to issue this warrant under 18 U S C. §§ 2703(c)(1)(A), and 2711(3)(A) Because the government has satisfied the requirements of 18 U S C § 3122, this warrant also constitutes an order under 18 U.S C § 3123

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☐ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute Methamphetamine. |

The application is based on these facts:
See Affidavit in Support of Application for Search Warrant  To ensure technical compliance with 18 U S C §§ 3121-3127, the requested warrant will also function as a pen register order  Attached is a certification from Assistant U S Attorney Seth M Schlessinger that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the United States Marshals Service  See 18 U S C §§ 3122(b), 3123(b)

- ☐ Continued on the attached sheet
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*
Elizabeth M. Brewer, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence:

Date: 11/26/2019

*Judge's signature*

City and state:    Philadelphia, PA    Hon  Richard A  Lloret, U.S Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number 469-989-0826 (the "TARGET TELEPHONE"), including information about the location of the Subject Telephone, that are, or will be, within the possession, custody, or control of, or that are, or will be, stored at premises controlled by Sprint, headquartered at 6200 Sprint Pkwy. Overland Park, KS 66251 (the "Account").

## ATTACHMENT B
### Particular Things to be Seized

**I.  Information to be Disclosed by Sprint**

To the extent that the information described in Attachment A is within the possession, custody, or control of Sprint, including any information that has been deleted, but is still available to Sprint, or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Sprint is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, for the time period beginning 60 days prior to the date of this order and continuing until the date of this order, including:

  i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records)), e-mail addresses, and IP addresses);

  ii.  upon the request of the agent, subscriber information for the TARGET TELEPHONE, for all numbers called by the TARGET TELEPHONE, and for all numbers calling the TARGET TELEPHONE;

  iii.  information regarding the cell towers and sectors, including physical location, through which the communications were sent and received; and

  iv.  information regarding the physical location of the TARGET TELEPHONE, including but not limited to data indicating the specific latitude and longitude of the TARGET TELEPHONE, such as enhanced 911 (E-911), mobile locator tool, ping, or any other cellular network provider specific/proprietary name for location based service, such as per call measurement data (PCMD), range to tower (RTT), or Network Event Location System (NELOS).

b.  Sprint shall also produce the information listed in paragraphs a. i, a. ii, and a. iii., above, in an ongoing, real time fashion for a period of thirty (30) days, at any time of the day or night.

c.  Sprint shall also produce all information about the location of the TARGET TELEPHONE for a period of thirty (30) days, during all times of day and night. "Information

1

about the location of the TARGET TELEPHONE" includes all available E-911 Phase II data, GPS data, latitude-longitude data, other precise location information, and any other cellular network provider specific/proprietary name for location based service, such as per call measurement data (PCMD), range to tower (RTT), or Network Event Location System (NELOS) ("Location Information"). To the extent that the Location Information is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the TARGET TELEPHONE on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

d. The thirty (30) days referred to in paragraphs b. and c. above is measured from the day on which Sprint first begins to provide information under this order or ten (10) days after this order is entered, whichever is earlier.

e. This order shall apply on any changed telephone number(s) subsequently assigned to an instrument bearing the same ESN, IMSI, or SIM as the TARGET TELEPHONE, or any changed ESN, IMSI, or SIM subsequently assigned to the same telephone number as the TARGET TELEPHONE, or any additional changed telephone number(s) and/or ESN(s), IMSI(s), or SIM(s), whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the TARGET TELEPHONE within the thirty (30) day period authorized by this order.

**II.     Information to be Seized by the Government**

All information described above in Section I that is relevant and material to locating a fugitive. Such information includes leads relating to: (1) the names of suspected criminal associates who assist the fugitive in fleeing; (2) the pattern of the fugitive's movements; and (3) the identity of a fugitive's usual locations, including houses where the fugitive may hide.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AUTHORIZATION TO OBTAIN LOCATION DATA CONCERNING CELLULAR TELEPHONE 469-989-0826 THAT IS STORED AT PREMISES CONTROLLED BY SPRINT | : : : : : : : Case No. M-1997M<br><br>**Filed Under Seal** |

### AFFIDAVIT

I, Elizabeth M. Brewer, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am an "investigative or law enforcement officer" as defined in 18 U.S.C. § 3051, as such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), Philadelphia Field Division and have been employed by the FBI since July of 2017. I have received specialized training from the FBI, including training in the investigation and identification of narcotics traffickers and violent gangs. During my tenure with the FBI, I have been assigned to the High Intensity Drug Trafficking Area ("HIDTA")/Safe Streets Violent Drug Gang Task Force ("SSVDGTF") of the Philadelphia Division, which investigates, among other violations of federal law, violent drug gangs and criminal organizations including those involved in the importation, distribution and manufacturing of controlled substances, Hobbs Act violations, outlaw motorcycle gangs, and homicides and shootings resulting from the drug trade. Prior to my employment with the FBI, I served as a Police Officer with the Santa Fe New Mexico Police Department from

1

September 2009 until June 2017. During my tenure with the Santa Fe Police Department, I received specialized training as a Detective in narcotics, fugitive apprehension and violent crimes, and served as a Task Force Officer with the United States Marshals Service. While a police officer and an agent, I have investigated numerous firearms violations, drug violations, and other related crimes. I have conducted physical and electronic surveillance, debriefed confidential sources, analyzed information obtained from court-authorized pen register and trap and trace intercepts, and participated in the drafting and execution of search warrants involving these matters.

3. I have participated in numerous narcotics investigations, debriefed or participated in debriefings of numerous of defendants, informants and witnesses who had personal knowledge regarding major drug trafficking organizations which act out crimes of violence, and have participated in all aspects of drug and homicide investigations. I have participated in all aspects of narcotics and violent crimes investigations including surveillance, analyzing information obtained from court-authorized pen register and trap and trace intercepts, Title III wiretap investigations, and analyzing telephone toll records. I am aware that those involved in criminal enterprise commonly use cellular telephones and other electronic devices in furtherance of their criminal activities and frequently change cellular telephone numbers and cellular phones in an effort to thwart law enforcement's use of electronic surveillance.

4. I make this affidavit pursuant to Fed. R. Crim. P. 41 and 18 U.S.C. §§ 2703(c)(1)(A) in support of an application for a tracking warrant authorizing the real-time disclosure of information in the possession of Sprint concerning the location of the cellular telephones assigned call number **469-989-0826** (hereinafter the "TARGET TELEPHONE") , cellular telephone subscribed to DANIELLE BRADFORD, 25100 Vista Murrieta, Murrieta, CA 92562, as further described in Attachment A. Sprint is a wireless telephone service provider

2

headquartered in Overland Park, Kansas, and provides cellular telephone service to the TARGET TELEPHONE. The TARGET TELEPHONE is described more fully below, as is the information sought to be disclosed to law enforcement officers in real time by Sprint.

5. By way of summary, and for the reasons described more fully below, the TARGET TELEPHONE is believed currently to be used by Danielle BRADFORD. who has recently been charged by indictment in Crim. No. 18-579 with a violation of 21 U.S.C. § 846, but has not been apprehended.

## PROBABLE CAUSE

### A. Indictment of BRADFORD

6. On October 9, 2019, a federal grand jury returned a second superseding indictment in Crim. No. 18-579, charging Danielle BRADFORD with a violation of 21 U.S.C. § 846. See Crim. No. 18-579, DE 105. A warrant for BRADFORD's arrest was issued contemporaneously with the return of the second superseding indictment. See Crim. No. 18-579, DE 106. However, to date BRADFORD has not been apprehended, and the warrant for her arrest remains outstanding.

### B. Target Phone: 469-989-0826

7. For the reasons explained herein, I respectfully submit that there is probable cause to believe that the TARGET TELEPHONE has been used, and is currently being used, by BRADFORD, and that there is therefore probable cause to believe that the location information associated with the TARGET TELEPHONE described in Attachment B will assist law enforcement in locating and arresting a "person to be arrested."

8. BRADFORD has used the TARGET TELEPHONE at least since July 2018. On or about July 7th, 2018, BRADFORD traveled from California to Philadelphia in order to take physical possession of United States currency from Hakim WILLIAMS intended for payment of

3

the purchase of methamphetamine by Curshawn BANKS from Edward AKWABOAH. (BANKS and WILLIAMS are currently charged as BRADFORD's co-defendants in Crim. No. 18-579; AKWABOAH is separately charged in the Southern District of Illinois.) BRADFORD is believed to have carried approximately $25,000 from Philadelphia to Los Angeles at the direction of AKWABOAH. Court-authorized Title III wiretaps captured multiple communications surrounding and during this trip among BRADFORD and her co-conspirators in which BRADFORD used the TARGET TELEPHONE to communicate with her co-conspirators.

9. On December 14, 2018, in Murrieta, California, BRADFORD was interviewed by law enforcement officers. During this interview, BRADFORD identified the TARGET TELEPHONE as her current telephone number. The TARGET TELEPHONE is currently subscribed through Sprint to Danielle BRADFORD, 25100 Vista Murrieta, Murrieta, CA 92562.

10. On November 21, 2019 agents received updated subscriber information from Sprint for the TARGET TELEPHONE, incident to an administrative subpoena served on November 14, 2019. The information provided by Sprint indicates that service for the TARGET TELEPHONE was still active at the time of subpoena service, and that the subscriber of the TARGET TELEPHONE continued to be BRADFORD.

**INFORMATION REGARDING THE LOCATION OF CELLULAR TELEPHONES**

11. Base on my training and experience, I know that Sprint is a company that provide cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the location of the cellular telephone to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively

4

precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

12. Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the TARGET TELEPHONE, including by initiating a signal to determine the location of the TARGET TELEPHONE on their network or with such other reference points as may be reasonably available. I am further aware that Sprint and can (and do) collect cell-site data pertaining to the TARGET TELEPHONE.

## AUTHORIZATION REQUEST

13. Based on the foregoing, I request that the Court issue the proposed Orders directing Sprint to disclose all location information, including cell-site location information, for the TARGET TELEPHONE, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c). I further request, pursuant to 18 U.S.C. § 2705(b) that the Court command Sprint, not to disclose the existence of the warrant for a period of thirty (30) days. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705(b). If Sprint were to provide immediate notice to the subscriber or user of the TARGET TELEPHONE, it would seriously jeopardize the ongoing investigation, as such a

5

disclosure would give them an opportunity to discard the phone, flee from prosecution, and otherwise harm the investigation and prosecution. See 18 U.S.C. § 2705(b)(2)(3), and (5).

14. I further request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in each Order unobtrusively and with a minimum of interference with Sprint services, including by initiating a signal to determine the location of the TARGET TELEPHONE on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

15. I further request that the Court order that this application and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Elizabeth Brewer, Special Agent
Federal Bureau of Investigation

Subscribed and sworn
to before me on this 26th
day of November, 2019.

HON. RICHARD A. LLORET
UNITED STATES MAGISTRATE JUDGE

6

## CERTIFICATION

Seth M. Schlessinger hereby certifies under penalty of perjury that:

1. I am an Assistant United States Attorney;

2. I incorporate the facts set forth in the Affidavit of FBI Special Agent Elizabeth M. Brewer;

3. I hereby certify that the information likely to be obtained by the requested pen-trap devices is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation.

*[signature]*

SETH M. SCHLESSINGER
Assistant United States Attorney

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number 469-989-0826 (the "TARGET TELEPHONE"), including information about the location of the Subject Telephone, that are, or will be, within the possession, custody, or control of, or that are, or will be, stored at premises controlled by Sprint, headquartered at 6200 Sprint Pkwy. Overland Park, KS 66251 (the "Account").

## ATTACHMENT B

### Particular Things to be Seized

**I.  Information to be Disclosed by Sprint**

To the extent that the information described in Attachment A is within the possession, custody, or control of Sprint, including any information that has been deleted, but is still available to Sprint, or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Sprint is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, for the time period beginning 60 days prior to the date of this order and continuing until the date of this order, including:

i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records)), e-mail addresses, and IP addresses;

ii.  upon the request of the agent, subscriber information for the TARGET TELEPHONE, for all numbers called by the TARGET TELEPHONE, and for all numbers calling the TARGET TELEPHONE;

iii.  information regarding the cell towers and sectors, including physical location, through which the communications were sent and received; and

iv.  information regarding the physical location of the TARGET TELEPHONE, including but not limited to data indicating the specific latitude and longitude of the TARGET TELEPHONE, such as enhanced 911 (E-911), mobile locator tool, ping, or any other cellular network provider specific/proprietary name for location based service, such as per call measurement data (PCMD), range to tower (RTT), or Network Event Location System (NELOS).

b.  Sprint shall also produce the information listed in paragraphs a. i, a. ii, and a. iii., above, in an ongoing, real time fashion for a period of thirty (30) days, at any time of the day or night.

c.  Sprint shall also produce all information about the location of the TARGET TELEPHONE for a period of thirty (30) days, during all times of day and night. "Information

1

about the location of the TARGET TELEPHONE" includes all available E-911 Phase II data, GPS data, latitude-longitude data, other precise location information, and any other cellular network provider specific/proprietary name for location based service, such as per call measurement data (PCMD), range to tower (RTT), or Network Event Location System (NELOS) ("Location Information"). To the extent that the Location Information is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the TARGET TELEPHONE on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

   d.  The thirty (30) days referred to in paragraphs b. and c. above is measured from the day on which Sprint first begins to provide information under this order or ten (10) days after this order is entered, whichever is earlier.

   e.  This order shall apply on any changed telephone number(s) subsequently assigned to an instrument bearing the same ESN, IMSI, or SIM as the TARGET TELEPHONE, or any changed ESN, IMSI, or SIM subsequently assigned to the same telephone number as the TARGET TELEPHONE, or any additional changed telephone number(s) and/or ESN(s), IMSI(s), or SIM(s), whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the TARGET TELEPHONE within the thirty (30) day period authorized by this order.

**II. Information to be Seized by the Government**

   All information described above in Section I that is relevant and material to locating a fugitive. Such information includes leads relating to: (1) the names of suspected criminal associates who assist the fugitive in fleeing; (2) the pattern of the fugitive's movements; and (3) the identity of a fugitive's usual locations, including houses where the fugitive may hide.